**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| JOSHUA ALEXANDER, | ) | |
| AIS# 262945, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO.:** |
| | ) | **2:21-CV-305-ECM-KFP** |
| G. WHITLEY, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

## SPECIAL REPORT AND ANSWER

COME NOW the Defendants, (former) Lt. Dominic Whitley and Officer Marquino Siler, through undersigned counsel, and pursuant to this Court's Order(s) submit the following written report and answer:

## PARTIES

1.      Plaintiff, Joshua Alexander("Alexander"), is an Alabama Department of Corrections ("ADOC") inmate, who is incarcerated at W.E. Donaldson Correctional Facility ("Donaldson") in Bessemer, Alabama. At all times material to this case, Alexander was housed at Ventress Correctional Facility ("Ventress") in Clayton, Alabama.

2.      Defendant, Dominic Whitley ("Lt. Whitley"), was employed, at all times material hereto, by ADOC as a Correctional Lieutenant at Ventress.

3.      Defendant, Marquino Siler ("Officer Siler"), is employed by ADOC as a Correctional Officer at Ventress.

**DEFENDANTS' EXHIBITS**

1.  Exhibit A –    Certified, Redacted Institution Records;

2.  Exhibit B –    Affidavit of Officer, Senior, Marquino Siler dated July 26, 2021;

3.  Exhibit C –    Affidavit of Lt. Dominic Whitley;

4.  Exhibit D –    Disciplinary Records;

5.  Exhibit E –    Affidavit of Officer, Senior, Marquino Siler dated November 22, 2021;

6.  Exhibit F –    Affidavit of Officer Lance Cannon;

7.  Exhibit G –    Affidavit of Officer Barbara Wallace;

8.  Exhibit H –    Affidavit of Officer Sylvia Hick; and

9.  Exhibit I –    Redacted Medical Records.

**PLAINTIFF'S CLAIMS**

On June 4, 2021, the pro se inmate Plaintiff Joshua Alexander filed an Amended Complaint against Lt. Whitley and Officer Siler for alleged excessive force. (Doc. 7). Alexander alleges he was the victim of two separate alleged excessive force incidents at Ventress in October 2020, which allegedly took place within hours of each other and one of which only involved Officer Siler.

With respect to the first alleged incident, Alexander claims that on October 12, 2020, at 11:00 p.m., he was sucker punched by Officer Siler. (Doc. 7, p. 3). No allegations are asserted here against Lt. Whitley. This alleged incident occurred after Alexander was stripped searched during a shakedown by Officer Sanders and Officer Siler outside of Alexander's dorm. (Doc. 7, p. 3). During this strip search and shake down, a cell phone was discovered on Alexander. (Doc. 7, p. 3). After the officers retrieved the cell phone, Officer Sanders told Alexander

2

to get dressed and go back into the dorm. (Doc. 7, p. 3). Alexander claims that while he was being escorted back to the dorm, with Officer Sanders in front of him and Officer Siler behind him, Officer Siler allegedly stopped him and told him step outside onto the porch. (Doc. 7, p. 3). Officer Siler then purportedly punched Alexander from the side which Alexander claims "knock[ed] the vision out of [his] right eye." (Doc. 7, p. 3). When Alexander allegedly asked Officer Siler why Siler had hit him, Siler allegedly responded " Did I wanted some straightening." (Doc. 7, p. 3). Alexander went to the Health Care Unit (HCU) where he was given antibiotic eye drops and steroid drops and his body chart was completed. (Doc. 7, p. 4).

The second alleged incident happened on October 13, 2020, when Alexander sought out Officer Siler who was in F-Dorm, while Alexander was allegedly on his way to breakfast. (Doc. 7, p. 4). According to Alexander, F-Dorm was the only dorm with cameras inside the prison at that time. (Doc. 7, p. 4). When Alexander found Officer Siler, Alexander allegedly accused Siler of having "assaulted [him] outside in the dark" and allegedly challenged Siler to "kill [him] on camera". (Doc. 7, p. 5). Alexander alleges that Lt. Whitley then "came up and drew his stick aggressively approaching me." (Doc. 7, p. 5). However, Alexander fails to mention that Whitley first tried to deescalate the situation that Alexander had created by asking Alexander to calm down and return to his dorm. (Ex. A, Certified, Institutional Records, Use of Force Investigative Report, p. 15). Alexander further fails to mention that in response to Lt. Whitley asking him to calm down and return to his dorm, Alexander brandished an inmate made knife at

3

Whitley and refused to put his knife down, as ordered. ( Ex. A, Use of Force Investigative Report, p. 15). Instead, according to Alexander, he retreated (with the knife) into the dorm where he was followed by Officer Siler and Lt. Whitley and allegedly sprayed "with over five cans of chemical spray". (Doc. 7, p. 5; Ex. A, Use of Force Investigative Report, at p. 15). Alexander claims that he "then [allegedly] passed out on the floor subdued and turned over on [his] stomach in a [purportedly] defenseless position." (Doc. 7, p. 5). Here, Alexander continues to paint himself as a victim by failing to mention that he grabbed Officer Silers' legs causing Siler to fall, when Officer Siler attempted to put handcuffs on him, that he then attempted "to mount Officer Siler" and that other inmates tried to prevent officers from restraining him. (Ex. A, Use of Force Investigative Report, p. 15). Instead, Alexander claims that while he was on the floor in an allegedly defenseless position, Officer Siler and Lt. Whitley "kicked and beat" him in the head with their batons and that other inmates purportedly intervened to stop the officers from "killing" him. (Doc. 7, p. 5). However, there is nothing in Alexander's corresponding body chart to suggest that Alexander's head was kicked and struck with batons, as alleged by Alexander. (Ex. A, Alexander's Body Chart, at p. 28). Alexander claims these alleged "assaults has caused many damages that [he] has not recovered from, including mental illness" and "ongoing" and "needed" eye examinations for which he must pay co pays. (Doc. 7, p. 6). Alexander is seeking $25,000 in punitive damages, $25,000 in compensatory damages and $25,000 in mental distress damages from each of the Defendants, Lt. Whitley and Officer Siler.

4

## DEFENDANTS' RESPONSE/ANSWER

1.    Defendants deny that they violated the Alexander's constitutional rights.

2.    Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.    Alexander has failed to state a claim upon which relief may be granted.

4.    Defendants are immune from suit under the Eleventh Amendment to the United States Constitution and Sovereign Immunity.

5.    Defendants are absolutely immune based on Eleventh Amendment Immunity.

6.    Defendants are immune from suit due to qualified immunity.

7.    Defendants are immune from suit due to state-agent immunity.

8.    There is no Respondeat Superior liability.

## STATEMENT OF FACTS

On October 12, 2020, Lt. Whitley, was the Shift Commander on Ventress' 3rd Shift. (Ex. A, Certified, Institutional Records, Incident Report, p. 2). That night, around 11:00 p.m., Lt. Whitley and several 3rd shift officers were involved in searching for contraband throughout the institution. (Ex. A, Incident Report, p. 2). It was during this search for contraband that Officer Siler and other officers conducted a shakedown in Dormitory D-1, which was Alexander's dorm. (Ex. A, Incident Report, p. 2; Ex. B, Affidavit of Officer, Senior, Marquino Siler). Officer Siler and Officer Sanders shook down Alexander's bed and Officer Sanders

instructed Alexander to report to the barber shop for a strip search. (Ex. B). A cell phone was discovered on Alexander during this search. (Ex. A, Incident Report, p. 2; Ex. B). Alexander pulled a cell phone out of his pants, broke it, and gave it to Officer Siler. (Ex. A, p. 2; Ex. B). All three of them walked back into Dormitory D-1 and then Officers Silers and Sanders shook down several other beds before exiting the dorm. (Ex. B).

Alexander informed Lt. Whitley that he had allegedly been hit in his eye by Officer Siler after his cell phone was confiscated. (Ex. A, Incident Report, p. 2, Ex. C, Affidavit of Lt. Dominic Whitley). Pursuant to Lt. Whitley's instruction, Alexander was escorted to the Health Care Unit ("HCU") for a medical assessment on October 13, 2020 at 1:25 a.m. (Ex. A, Body Chart, p. 5; Ex. C). Alexander's body chart, which was completed at 1:25 a.m., describes his markings as follows: "R eye redness with schlera abrasion." While in the HCU, Alexander realleged that "Officer Siler Hit me in my eye." (Ex. A, Body Chart, p. 5). After his medical assessment Alexander was allowed to remain in his assigned dorm in general population pending disciplinary action. (Ex. A, Incident Report, p. 2; Ex. C). Alexander was subsequently charged with and pled guilty to possessing a cell phone. (Ex. D, Disciplinary Record, p. 3).

After the contraband search was completed at approximately 1:20 a.m. on October 13, 2020, Lt. Whitley ask Officer Sanders and Officer Siler if they had to use force on Alexander. (Ex. A, Incident Report p. 2; Ex. B). They both responded, "No." (Ex. A, Incident Report, pp. 2-3; Ex. B). Lt. Whitley instructed both Officer Sanders and Officer Siler to write a statement about this incident,

which they did. (Ex. A, pp. Handwritten Statements, pp. 6-7; Ex. B). Both Officer Siler and Officer Sanders wrote that "no force was used on the inmate" in their handwritten statements. (Ex. A, pp. Handwritten Statements, pp. 6-7).

A few hours later, on October 13, 2020, Alexander and inmate Derrick Moton entered Dorm-F where Officer Siler was assigned and attempted to start an altercation with him. (Ex. A, Incident Report p. 13, p. 1; Ex. C). Alexander approached Officer Siler and said, "Siler, bring your bitch ass out here. You know what time it is", or "Bring your ass out here and let's get it" or words to that affect. (Ex. A, Incident Report, p. 13; Ex. E, Affidavit of Correctional Officer, Senior, Marquino Siler dated 11.22.21). Officer Siler immediately radioed Lt. Whitley to 10-22 to F-dorm. (Ex. A, Incident Report, p. 13; Ex. E). Lt. Whitley responded and entered the D. Dorm's Lobby with the intentions of de-escalating the problem. (Ex. C).

Lt. Whitley attempted to deescalate the situation by ordering Alexander to calm down and by telling Alexander to come with him and go to his assigned dormitory. (Ex. A, Incident Report, pp. 13-14; Ex. B and Ex. E). Lt. Whitley further ordered Alexander to turn around so that handcuffs could be applied. (Ex. A, Incident Report, p. 14). Alexander refused to comply with Lt. Whitley's orders. (Ex. A, Incident Report, p. 14; Ex. B). Instead, Alexander pulled out a prison made knife from his pants and threatened to stab Lt. Whitley. (Ex. A, Incident Report, p. 14; Ex. B; Ex. C; and Ex. E). Lt. Whitley called for assistance. (Ex. A, Incident Report, p. 14). Officer Siler, Sgt. Dejour and Officer Sanders entered F-Dorm Lobby. (Ex. B). Alexander and inmate Moton than walked/ran into one side

7

of F-Dorm with the prison made knife in his hand (Ex. B; Ex. C) Those officers as well as other officers who had responded to the code red call for assistance arrive and followed Alexander into F-Dorm. (Ex. A, Incident Report, p. 14, Ex. B, Ex. C, Ex. E). Alexander was given multiple orders by security staff including Lt. Whitley to drop the knife and/or place it on the ground. (Ex. A, Incident Report, p. 14, Ex. B, Ex. C, Ex. E). Alexander refused to comply with the orders given. (Ex. A, Incident Report, p. 14, Ex. B, Ex. C, Ex. E).

Lt. Whitley retrieved his chemical agent and administered a one (1) second burst to Alexander's facial area. (Ex. A, Incident Report, p. 14; Ex. C, Ex. E). Alexander was again ordered to drop his knife. (Ex. A, p. 14; Ex. C; Ex. E). Alexander refused to comply again. (Ex. A, p. 14; Ex. E). Alexander would not, in fact, drop his knife until he was sprayed again by security staff. (Ex. A, p. 14; Ex. B; Ex. C, Ex. E). And although Alexander fell to the ground and dropped the knife, Alexander continued to physically resist officers instructing him to handcuff from the rear. (Ex. B)

Lt. Whitley and Officer Siler quickly approached Alexander with the intentions of placing handcuffs on him, but once they got close to Alexander, he (Alexander) grabbed and/or tripped Officer Siler causing Officer Siler to land on the floor. (Ex. A, Incident Report, 14; Ex. C; Ex. E). When Officer Siler fell back to the floor Alexander then attempted to get on top of Officer Siler. (Ex. A, Incident Report p. 14; Ex. C). At this point, Lt. Whitley and Officer Sanders struck Alexander with their respective expandable baton giving Alexander orders to place his hands behind his back. (Ex. A, Incident Report, p. 14; Ex. C ). At no

8

point did Lt. Whitley strike Alexander in Alexander's head with his baton, as alleged by Alexander. (Ex. C ). And there is no evidence to that effect in the body chart. (Ex. A, Body Chart, p. 28).

Officer Cannon, who responded to the Code Red, instructed all inmates to get on their assigned bed. (Ex. F, Affidavit of Officer Cannon). Nevertheless, there were multiple aggressive inmates causing a disturbance. (Ex. G, Affidavit of Barbara Wallace). When Officer Hicks arrived at the incident in response to the code, she saw a lot of Officers surrounding the inmate as they were trying to put handcuffs on him. (Ex. H, Affidavit of Officer Hicks). However, several unknown inmates were attempting to prevent officers from restraining Alexander, by either running towards Alexander and/or by attempting to lay on top of Alexander. (Ex. A, Incident Report, p. 14). Therefore, several officers including Officer Wallace had to administer spray to the inmates that were trying to get involved to secure the scene. (Ex. A, p. 14).

Two inmates refused to remove themselves away from Alexander while officers were trying to gain control of Alexander. (Ex. E). Both of these inmates refused to comply with Officer Wallace's verbal warnings to them to back up and stop interfering. (Ex. E). And when one of these inmates said to Officer Wallace, "Fuck you bitch" and cleared his nasal cavity to create sputum to spit on her, Officer Wallace had to distribute a burst of chemical agent to that inmate's facial area. (Ex. E.). The second inmate was sprayed when he walked up behind the officers during the incident. (Ex. E).

Alexander finally complied and there was no force used once Alexander was restrained. (Ex. B). Lt. Whitley cuffed Alexander to the rear and escorted him out of Dorm-F and Alexander was escorted to the HCU for medical assessment and a Body Chart. (Ex. A, pp. 14, 28; Ex. B). Alexander's body chart reflects a "[r]aised whelp on upper L back x6 in. Raised whelp to Bilateral lower back x2 aprox. 6 in in length. Swelling to L shoulder. Redness to Bilateral eyes." (Ex. A, Body Chart, p. 28). After receiving his body chart, Alexander was reassigned to the Restrictive House Unit pending his disciplinary action. (Ex I, Certified Medical Records, p. 1) There was no medical impediment to assigning him to restrictive housing. (Ex. I, Medical Records, p. 3). Officer Siler had to receive a medical assessment as well, because he fell on his left elbow. (Ex. A, p. 26).

During the incident Alexander's cohort, Moton, left the dormitory and was later located inside of Dormitory D. When Lt. Whitley attempted to search Moton, Lt. Whitley felt a concealed knife in the front of Moton's pants. (Ex. A, p. 14). Moton was verbally aggressive towards Lt. Whitley and when Moton's concealed knife dropped on the floor, Moton attempted to quickly retrieve his knife off the floor. (Ex. A, p. 14). Moton continued to resist while on the floor. (Ex. A, p. 14). Lt. Whitley was able to gain back control of Moton and placed Moton in handcuffs. (Ex. A, p. 14). Moton was then escorted to the HCU for medical assessment. (Ex. A, p. 27). While inside the HCU, Lt. Whitley learned from another Lieutenant that Moton was the inmate who had struck that Lieutenant in his facial area during the incident and that Moton had been observed with a handmade knife in his possession inside of Dormitory F-1. (Ex. A, p. 14). After

being released from medical, as noted above, Alexander and also Moton were placed in the Restrictive Housing Unit pending disciplinary action. (Ex. A, p. 14).

An investigation was conducted of this incident and the force was determined to be justified by the investigating officer. (Ex. A, Use of Force Investigative Report, p. 15). The Investigating Officer found that Lt. Whitley and the officers that responded used the minimal amount of force necessary to gain compliance with the orders given to Alexander to drop the knife and submit to handcuff restraints. (Ex. A, Use of Force Investigative Report, p. 15). Alexander was found guilty of several violations relating to this incident and his inmate status was raised to that of closed custody. (Ex. D, Disciplinaries, pp. 3, 7, 11, 15, 19; Ex. I, Medical Records, pp. 2, 15).

Based on a review of Alexander's medical records, Alexander does not appear to have sought or needed additional treatment relating to the incident in Dorm-F. (Ex. I, Medical Records). And, although Alexander had several complaints about his eye which he attributed to being hit in the eye by Officer Siler, a visit to an eye doctor at Callahan Eye Institute on April 7, 2021, confirmed that Alexander's complained about condition is "[d]ry eye syndrome of both eyes . . .". (Ex. I, Medical Records, pp. 42-45). Callahan Eye Institute suggested that Alexander be prescribed Artificial Tears four times a day in both eyes. (Ex. I, Medical Records, p. 41). There is no indication that this eye condition is remotely connected to Alexander having been allegedly socked in the eye by Officer Siler on October 12, 2020, following a shakedown.

11

## LEGAL ARGUMENT

### Eighth Amendment: Excessive Force

Alexander claims that Lt. Whitley and Officer Siler have subjected him to excessive force and cruel and unusual punishment based on the above referenced alleged two incidents that occurred on October 12 and October 13, 2020. (Doc. 7, p. 2). Alexander's claim arises under the Eighth Amendment which "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 218, 321 (11th Cir. 1987).

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges. See Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). As Alexander is asserting a claim under the Eighth Amendment for excessive force, he must prove both an objective and subjective component. First, a Plaintiff, like Alexander, must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and second, the Plaintiff "must prove that force was applied . . . maliciously and sadistically for the very purpose of causing harm." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not the sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

With respect to the first alleged incident on October 12, 2020, involving only Officer Siler, the body chart reflects that Alexander had what appeared to be

12

a slight abrasion to his right eye. Although Alexander was provided medicated eye drops by the HCU shortly after the alleged incident and he did express complaints about his eye, his complaints based on Callahan Eye Institute's findings i.e., dry eye syndrome of both eyes appear to be unrelated to the October 12, 2020, incident. Alexander did not suffer multiple injuries, nor did he suffer any permanent damage. Thus, when compared with the injuries sufficient to meet the objective standard, which often include multiple blows that caused multiple injuries, Alexander's alleged injury in this case is *de minimis* and thus fails to state and establish a constitutional violation, regardless of the subjective intent.

Alexander's allegation regarding the alleged October 12, 2020 incident involving Officer Siler (and the discovery and loss of Alexander's cell phone during the shakedown) also fails to meet the subjective component of an Eighth Amendment claim. Officer Siler and the other officer present at the time of the alleged incident have denied Alexander's allegation and both have stated that no force was used. Regardless, there is nothing to indicate, from the slight abrasion Alexander attributes to Officer Siler, that the alleged "punch" was applied maliciously and sadistically for the very purpose of causing harm. An Eighth Amendment claimant must show more than negligence, more than gross negligence, and even more than deliberate indifference. Hudson, 503 U.S. at 6-7 (stating that the deliberate indifference standard is not appropriate in prison cases when officials stand accused of using excessive physical force.); Whitley, 475 U.S. at 320.

13

With respect to second alleged incident that occurred a few hours later on October 13, 2020, during the 3rd shift, Alexander, through his aggressive and combative actions, created that dangerous situation and Alexander has only himself to blame for escalating the situation. Alexander undisputedly had a concealed prison made knife on him when he aggressively sought out Officer Siler in another dorm. And when Alexander approached Officer Siler, Alexander did not come alone, but brought along another inmate cohort with him, who was also carrying a concealed prison made knife. And after this, it was Alexander who refused to calm down and return to his dorm as Lt. Whitley asked him to do. Instead, Alexander made matters much worse by brandishing a prison made knife at Lt. Whitley and then carrying it into a dorm full of inmates. Alexander refused multiple requests to put down his knife, continued to be physically aggressive by grabbing Officer Siler's legs and causing Siler to fall to the ground and then attempted to climb on top of him. Based on Alexander's actions, a very dangerous melee appears to have ensued and had to be brought under control for the safety of the officers and inmates. However, as the Use Of Force investigator concluded, the minimal amount of force was used and was justified. Although the body chart showed that Alexander had a raised whelp on his upper and lower back and swelling to his shoulder right after this incident going forward Alexander does not appear to have had complaints relating to this. And allegations relating to Alexander's back and shoulder are not mentioned in his Amended Complaint.

In evaluating an officer's subjective appreciation of the legitimacy of use of force in a given situation, a variety of factors are considered, including: "the

14

extent of the injury; the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response." Hudson at 708, 112 S.Ct. 995; see also Whitley, 475 U.S. at 321, 106 S.Ct. 1078; Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996). Inferences may be drawn from these factors as to "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321, 106 S.Ct. 1078 (quoting Johnson, 481 F.2d at 1033). Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)(quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

In applying the above referenced factors here, it is clear that no constitutional violation for excessive force has been alleged. Moreover, where the only questions concern the reasonableness of the force used by a prison official, the Defendant will ordinarily be entitled to judgment as a matter of law. See Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999)(explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); McBride, 170 Fed.Appx. at 647 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and

15

sadistically for the very purpose of causing harm.'). Clearly, in light of the facts set forth above, no constitutional violation for excessive force has been alleged.

### Sovereign Immunity and Eleventh Amendment Immunity

To the extent Alexander may have sued Lt. Whitley and Officer Siler in their official capacity, as state officials/employees they are absolutely immune from suit for damages in their official capacities. Walker-El v. Naphcare Med. Servs., Inc., 432 F.Supp.2d 1264, 1268 (S.D. Ala. 2006) citing Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry. See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct. at 1347 and Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S. Ct. 504 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). Thus, this suit is in reality a suit against the State. Lt. Whitley and Officer Siler are

16

also entitled to sovereign immunity pursuant to § 14 of the Alabama Constitution of 1901. Therefore, the Defendants, Lt. Whitley and Officer are absolutely immune from damages liability and to the extent the claims brought against them are in their official capacity, they are due to be dismissed.

### Qualified Immunity and State-Agent Immunity

To the extent Alexander is also suing Lt. Whitley and Officer Siler in their individual capacity, they are also immune from suit by virtue of qualified immunity and also state agent immunity, if any of Alexander's claims could be construed as state law claims. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). As explained, Lt. Whitley and Officer Siler's alleged acts or omissions have not violated any established constitutional or statutory rights. Further, any alleged acts or omissions of Lt. Whitley and Officer Siler consist of discretionary functions, and because the alleged actions do not violate any clearly established constitutional or statutory rights, they are each protected by qualified immunity. Pinkney v. Davis, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in

17

their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Wilson</u>, 163 F.3d at 1295. In addition, Defendants are entitled to state agent immunity to the extent any of Alexander's alleged claims could be construed as alleged state law causes of action. <u>See</u> <u>Adams v. Franklin</u>, 111 F. Supp.2d 1255(M.D. Ala. 2000); <u>Davis v. Purcell</u>, 2014 WL 988596 (N.D. Ala). Accordingly, Alexander's claims against Lt. Whitley and Officer Siler are due to be dismissed.

## <u>CONCLUSION</u>

There are no genuine issues of material fact, and the Defendants (former) Lt. Dominic Whitley and Officer Marquino Siler are entitled to judgment as a matter of law. Therefore, (former) Lt. Whitley and Officer Siler respectfully request that this Honorable Court dismiss this case and the claims against them.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL

/s/ MARY GOLDTHWAITE
MARY GOLDTHWAITE
Assistant Attorney General
Counsel for Defendants
Whitley and Siler

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
(334) 353-9189
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2022, I electronically filed the foregoing Special Report and Answer with the Clerk of the Court, using the CM/ECF system, and that I have further served a copy on the Plaintiff, by placing same in the United States Mail, postage prepaid, and properly addressed as follows:

Joshua Alexander, AIS #262945
W.E. Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

 /s/ MARY GOLDTHWAITE
OF COUNSEL

19